UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHRYN LANE,

    Plaintiff,

  v.                                            Case No. 01-C-925

PIPER JAFFRAY COMPANIES,

    Defendant.

**DECISION AND ORDER ON PLAINTIFF'S PETITION FOR
ATTORNEYS' FEES AND COSTS**

        Currently pending before this court is the plaintiff's petition for attorneys' fees and costs in the above-captioned matter. The petition was triggered by the jury's returning a verdict partially in favor of the plaintiff. More precisely, on January 19, 2005, after eight days of trial, a jury found that the plaintiff, Kathryn Lane ("Lane"), had been retaliated against by the defendant for filing a complaint with the EEOC in which she alleged that she had been discriminated against on the basis of her gender, in violation of Title VII. In that same verdict, however, the jury found that Lane had failed to prove that she had been discriminated against by the defendant on the basis of her gender in any other respect. The jury awarded her compensatory damages of $40,000 and punitive damages of $175,000. On March 23, 2005, the court denied all of the defendant's post-trial motions and awarded Lane back pay of $2,908.58.

        The plaintiff claims that she is a prevailing party and that she is therefore entitled to an award of attorneys' fees in the amount of $366,062.25 and costs in the amount of $87,933.37. In arriving at the amount of requested attorneys' fees, the plaintiff uses the following hourly rates for the legal

professionals identified: $425 for Attorney Paul W. Mollica, Partner, Meites, Mulder, Burger & Mollica; $245 for Attorney Jamie S. Franklin, Associate, Meites, Mulder, Burger & Mollica; $120 for Katharine Meagher, Paralegal, Meites, Mulder, Burger & Mollica; and $120 for Elena Vranos, Paralegal, Meites, Mulder, Burger & Mollica.

In response to the plaintiff's petition for attorneys' fees, defendant Piper Jaffray Companies ("Piper Jaffray") poses a host of objections, including the following. First, Piper Jaffray asserts that the petition for fees should be considered by reference to reasonable attorney billing rates in Milwaukee, not reasonable attorney billing rates in Chicago. Second, Piper Jaffray asserts that the plaintiff "has asked the Court to award her fees for all aspects of this case, failing to take into account her lack of success on the distinct and separate claim of gender discrimination." (Def.'s Mem. at 1.) Third, Lane's request for the attorneys' fees of her local counsel should be denied outright because "these attorneys performed absolutely no role in this case, let alone any distinct role." (Def.'s Mem. at 1.)

Title 42 U.S.C. § 2000e-5(k) provides, in pertinent part, that "[i]n any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." Plaintiffs are considered to be prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). That Lane is a prevailing party is clear. After all, the jury found that she had been retaliated against and the jury awarded her both compensatory damages and punitive damages. However, whether Lane should be awarded the full amount of attorneys' fees that she requests is debatable.

In calculating the amount of attorneys' fees to be awarded to a prevailing plaintiff in a discrimination case such as this, courts are to assign a "lodestar" amount, calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003) (citing *Hensley* 461 U.S. at 433). Once this amount is calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation. *Id.* These factors include: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Mathur*, 317 F.3d at 742 n.1 (citing *Spellan v. Bd. of Educ. for Dist 111*, 59 F.3d 642, 645 (7th Cir. 1995)).

One of the first steps to be taken in calculating the lodestar amount is deciding whether the Chicago legal market rate or the Milwaukee legal market rate should be used in arriving at reasonable hourly rates for Attorneys Mollica and Franklin, and for Paralegals Meagher and Vranos. The plaintiff argues that the court should use the Chicago market rate while Piper Jaffray argues that the court should use the Milwaukee market rate.

In *Mathur*, the Seventh Circuit noted that the presumed applicable market rate is that of the lawyer's legal community. *Mathur*, 317 F.3d at 743. That said, the *Mathur* court went on to state:

> [I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if "local attorneys could do as well, and there is no other reason to

3

> have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service."

*Id*. at 744 (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)). Stated another way,

> a district court has the discretion to modify an out-of-town attorney's rate if "there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were rendered."

*Id*. (quoting *Chrapliwy*, 670 F.2d at 769).

In *Mathur*, the Seventh Circuit ruled that the district court erred in using the southern Illinois legal community's reasonable hourly rate to calculate an attorney's fee award to the Chicago lawyer who had handled the case in the United States District Court for the Southern District of Illinois. This was because the record showed that Mathur had been unable to find an attorney in southern Illinois who was willing to take his case. He thus was compelled to look for counsel outside of the southern Illinois legal community. According to the court,

> [w]hen a plaintiff finds out-of-town counsel after being unable to find a local attorney, "the court should make the allowance on the basis of the chosen attorney's billing rate unless the rate customarily charged in *that attorney's locality* for truly similar services is deemed to require adjustment."

*Mathur*, 317 F.3d at 744 (quoting *Chrapliwy*, 670 F.2d at 769).

Unlike in *Mathur*, there is nothing in this record which suggests that Lane sought, but was unable to find, any attorneys in the Milwaukee area who were willing to take her case. To the contrary, there is no indication that she even looked for a lawyer in the Milwaukee legal community to take her case. Instead, it was plaintiff's counsel who sought out Ms. Lane and offered their services to her. This is clear from the plaintiff's memorandum:

> In 2000, Ms. Lane's counsel, Meites, Mulder, Burger & Mollica, were retained to represent individual female brokers who sought class certification in a sex discrimination case in the U.S. District Court in the Northern District of California. During the discovery phase of that litigation, the firm became aware of Kathryn Lane's potential claims, and in March 2001, the firm began to investigate her case. Ms. Lane filed an EEOC charge in April 2001, then she moved to join the then-pending class case as a class representative. The judge in the California litigation denied the motion to add Ms. Lane on venue grounds, and Ms. Lane then timely filed her complaint in this Court.

(Pl.'s Pet. at 6.) Under such circumstances, and in light of the Seventh Circuit's discussion of the issue in *Mathur*, this court is persuaded that an hourly rate which local attorneys would have charged for the same service as performed by plaintiff's Chicago counsel is the appropriate rate to be used in calculating the lodestar amount.

In that regard, plaintiff's Chicago counsel employed the services of Attorney Howard Schoenfeld of DeWitt, Ross & Stevens as local counsel "because of his many years of trial experience and because his firm already represented Ms. Lane's spouse in another, unrelated matter." (Pl.'s Pet. at 14.) Indeed, according to his affidavit, Attorney Schoenfeld has practiced law in Wisconsin since 1971. His practice consists of "litigation in numerous areas including, but not limited to, claims arising out of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*." (Pl.'s Ex. 5 ¶ 2.) Attorney Schoenfeld charged Ms. Lane's Chicago counsel an hourly rate of $280. According to Attorney Schoenfeld, "[t]his rate is consistent with my billing rate for clients in cases similar to the instant case." (Pl.'s Ex. 5 ¶ 4.) Such being the case, an hourly rate of $280, rather than the requested hourly rate of $425, will be used by the court to calculate the lodestar amount for Attorney Mollica's fees. And because $280 is sixty-five percent (65%) of $425, that same percentage will be applied to reduce the requested hourly rates of Attorney Franklin and the two paralegals to arrive at a reasonable hourly rate for each of those legal professionals that is

5

Case 2:01-cv-00925-WEC    Filed 05/24/05    Page 5 of 17    Document 212

commensurate with Milwaukee rates. Thus, the court will use an hourly rate of $159.25 ($245 x .65) to calculate the lodestar amount for Attorney Franklin's fees. Finally, the court will use an hourly rate of $78 ($120 x .65) to calculate the lodestar amount for Paralegals Meagher and Vranos.

Piper Jaffray also takes issue with the amount of time the plaintiff claims was reasonably spent in successfully prosecuting her claim. More precisely, the defendant asserts that

> Lane prevailed solely on her claim that Piper Jaffray retaliated against her in violation of Title VII. She did *not* prevail on her claim that Piper Jaffray subjected her to unlawful gender discrimination. Any award of fees must account for Lane's failure to succeed on this core issue that lay at the heart of this litigation.

(Def.'s Mem. at 4.) To reflect that limited success, Piper Jaffray suggests that the lodestar amount which is ultimately arrived at be reduced by sixty percent (60%).

Once the lodestar amount is determined, the court is to consider the degree of success obtained is assessing whether there should be a reduction or enhancement of such lodestar amount. Indeed, in analyzing the fee request, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. In those cases where a prevailing plaintiff was partially successful the *Hensley* court held that two questions must be addressed:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley*, 461 U.S. at 434. In other words, a plaintiff should not be compensated for work performed on unsuccessful claims that are not legally or factually related to the claim on which the plaintiff prevailed. Instead, a partially prevailing party should be compensated for the legal expenses the suit would have generated had it involved only the prevailing and other related claims. A trial court should give its best estimate to this "elusive counterfactual." *Estate of Borst v. O'Brien*, 979 F.2d

6

Case 2:01-cv-00925-WEC   Filed 05/24/05   Page 6 of 17   Document 212

511, 516 (7th Cir. 1992). In the course of reaching its conclusions the court is to bear in mind the following:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants – often an institution and its officers, as in this case– counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 434-35 (citations and footnote omitted).

In the end, in arriving at a reasonable attorneys' fee to be awarded to partially prevailing plaintiffs "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436-37.

This was a hotly contested lawsuit. At the outset, the defendant filed a motion to dismiss and alternative motion to strike portions of the complaint. After that motion was decided on July 8, 2002 (in a twenty-two page decision), the parties embarked on the rocky road of "discovery." Within months, to wit, on November 4, 2002, the plaintiff filed a motion to compel and for a protective order. The briefing on this motion was stayed at the request of the parties in order to afford them an opportunity to mediate their dispute. Unfortunately, the mediation was unsuccessful. Thus, the court

7

was called upon to rule on the plaintiff's motion, which it did on January 30, 2003. But, the discovery disputes were not over. On August 15, 2003, the plaintiff filed another motion to compel, which the court ruled upon on October 9, 2003.

Thereafter the defendant filed a motion for summary judgment. The briefing surrounding that motion included numerous collateral motions: motions to strike, a motion to exclude, a motion to unseal documents, a motion to exceed page limitations, and a motion to cite additional authority. On September 17, 2004, the court issued a decision and order in which, *inter alia*, the defendant's motion for summary judgment was denied and a trial date was set. In the weeks leading up to the final pretrial and trial, both sides filed a bevy of motions in limine as well as a motion to quash subpoenas.

On January 10, 2005, a jury trial commenced on the plaintiff's discrimination and retaliation claims. On January 19, 2005, the jury returned its verdict, finding that the defendant had not discriminated against the plaintiff in the conditions of her employment, but finding that the defendant had retaliated against her for filing a discrimination charge with the EEOC. The jury awarded the plaintiff $40,000 in compensatory damages and $175,000 in punitive damages.

Following the trial the defendant filed a motion for judgment as a matter of law, for a new trial, or for remittitur. On March 22, 2005, the court issued its decision denying the defendant's motions and ordering entry of judgment for the plaintiff.

All of the above is to say that the prosecution of the plaintiff's claims was not a walk in the park. To the contrary, it was a battle all the way. Yet, plaintiff's counsel persevered in the face of a most staunch legal defense that was presented by Piper Jaffray. More to the point, the plaintiff

received excellent legal representation throughout these proceedings. Her legal counsel did not shy away from the fight. And the attorneys' fee award must reflect that reality.

Furthermore, that the plaintiff did not succeed on her discrimination claim does not mean that the court should somehow parse out the time and effort expended by counsel in pursuing that claim before arriving at the lodestar amount. In my view, that would be near impossible. The plaintiff claimed both that she had been discriminated against while she was working for Piper Jaffray and that she was retaliated against when she complained about that very alleged discrimination. This is just the sort of factual scenario (more accurately, factual continuum) to which the Supreme Court was referring in *Hensley* when it observed that

> [m]any civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 434-35. Simply stated, the work that was performed by plaintiff's counsel was generally speaking for the litigation as a whole, not merely for one particular claim or the other. The work was generally a package deal, not readily divisible by claim. Consequently, I reject the defendant's invitation to parse out certain categories of work as being readily and exclusively identifiable as only relating to the discrimination claim.

As noted above, the Supreme Court has stated that the court is to focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. When considering that matter, I am compelled to conclude that the plaintiff did indeed obtain significant relief. First of all, the plaintiff prevailed on her claim that she had been retaliated

9

against. She also persuaded the jury to award her compensatory damages of $40,000. That is a significant amount of money. Even more notably, the jury awarded her $175,000 in punitive damages. Once again, that is a significant amount of money; significant enough that it has no doubt captured the attention of the defendant and presumably will cause (if it has not already caused) the defendant to take a hard look at what might be done in its operations to avoid being subject to such a punitive measure in the future. Stated another way, the plaintiff's success in this lawsuit may contribute to future complainant's (should there be any) not being subjected to the same or similar retaliatory actions which the jury found Lane to have suffered.

In light of all the foregoing, I conclude that the lodestar amount of attorneys' fees in this action is as follows: $153,118 for Attorney Mollica (546.85 hours x $280) and $80,867 (507.80 hours x $159.25) for Attorney Franklin.

This is not to say, however, that the lodestar amount of attorneys' fees should be awarded. After all, the plaintiff did not prevail on her discrimination claim. Even though the legal work performed on such claim is not readily severable from that which was performed on the retaliation claim, a reduction of the lodestar amount may nevertheless be appropriate to reflect the plaintiff's failure to succeed on such claim. The Supreme Court made that clear in *Hensley* when it stated that the district court "may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. In my opinion, a twenty percent (20%) reduction in the lodestar amount reflects fairly the plaintiff's limited success in this lawsuit by virtue of her failure to succeed on her discrimination claim. This results in an award as follows: $ 122,494 ($153,118 x .80) for Attorney Mollica and $64,694 ($80,867 x .80) for Attorney Franklin, for a total of $187,188.

10

Piper Jaffray asserts that Lane cannot recover the "unnecessary and duplicative" fees of local counsel, certain paralegal fees, expert witness fees and attorneys' fees for travel time.

As to the paralegal fees, the "reasonable attorney's fee" provided for by statute should compensate for the work of paralegals as well as attorneys. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1988); *EEOC v. Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828, 838 (E.D. Wis. 1994). However, compensation should be limited to work performed by the paralegal that would otherwise be done by an attorney. In other words, compensation should be limited to legal, as contrasted with, clerical work. *Accurate*, 863 F. Supp. at 839 (citing *Jones v. Armstrong Cork, Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980)). To do otherwise would be to compensate directly for attorney overhead.

Bearing this in mind, the defendant asserts that 37.5 hours of Paralegal Vranos' time and 18 hours of Paralegal Meagher's time was clerical in nature. I agree. The billing records that were submitted by the plaintiff demonstrate that the above-stated amount of time was spent by those two paralegals for purely clerical tasks, such as gathering, copying and labeling of exhibits, and otherwise assisting at trial. Thus, the amount of attorneys' fees for paralegal assistance will be reduced by 37.5 hours. This leaves 42.5 hours (80 minus 37.5), for a lodestar amount of $3,315 ($78 x 42.5). That amount, reduced by twenty percent is $2,652.

The plaintiff also seeks to recover the amount which she paid for the services of local counsel, that amount being $16,088.72. Of that amount, the plaintiff paid Attorney Howard Schoenfeld of DeWitt Ross & Stevens the sum of $15,682.22. According to Attorney Mollica, "prior local counsel, Jordan Lewis, moved out of the jurisdiction during the pendency of this case, and as trial approached our office retained Howard Schoenfeld of DeWitt Ross & Stevens to help

us prepare for trial." (Mollica Decl. ¶ 8.) In his Supplemental Declaration Mr. Mollica further states as follows:

> Mr. Schoenfeld provided invaluable services to our trial team: preparing Ms. Lane for testimony, mooting our opening statement and closing arguments, helping select the jury, listening to and suggesting follow-up examination of witnesses, advising our team on trial strategy and local practices and providing a post-trial debriefing. It was decided that, because Mr. Schoenfeld came into the case belatedly to serve as local counsel, it would not have been a wise division of labor to have him examine witnesses at trial; he lacked the in-depth knowledge of the case that our office accumulated over several years of litigation.

(Mollica Supp. Decl. ¶ 5.)

The presence of local counsel can be of assistance to out-of-town counsel. For example, local counsel can acquaint out-of-town counsel with the known (but not formally announced) practices of various judges and court personnel. But, in order for the plaintiff to be awarded the fees paid to local counsel she must demonstrate that such fees were reasonably incurred. Simply stated, I do not find that all of Mr. Schoenfeld's fees were reasonably incurred by the plaintiff.

As stated above, Mr. Mollica avers that, as trial approached, Mr. Schoenfeld was retained to help Mr. Mollica's office prepare for trial. And I have no doubt that Mr. Schoenfeld aided immensely in such matters as preparing Ms. Lane for her testimony, selecting the jury and mooting the opening statement of Ms. Franklin and the closing argument of Mr. Mollica. But Mr. Schoenfeld's billing statement indicates that he attended the trial on January 10, 11, 12, 13 and 14, 2005. And indeed, the court can attest to Mr. Schoenfeld's presence at counsel table throughout the trial. Now, Mr. Schoenfeld is a very talented attorney and is well regarded in this community. However, during the course of this trial his talents were not on display – he did not personally participate in witness examination or jury argument. All of that work was handled by Attorneys

Mollica and Franklin, who are also fine lawyers. That Mr. Mollica and Ms. Franklin found Mr. Schoenfeld's assistance of value is certainly understandable. But, in order to require the defendant to pay the entire bill for Mr. Schoenfeld's services, the court must be persuaded that all of such services were reasonably necessary. Simply stated, I am not persuaded that it was reasonably necessary for Mr. Schoenfeld to sit in throughout the entire trial. Two lawyers of the respective experiences of Mr. Mollica and Ms. Franklin (together with the presence of a paralegal) should have been reasonably sufficient to present this case to the jury. Such being the case, I do not believe it reasonable to impose on the defendant all of Attorney Schoenfeld's fees (which have already been paid by Mr. Mollica's firm). More precisely, those fees of Mr. Schoenfeld which are attributable to his attending trial on January 11, 12, 13 and 14, 2005, will be excluded from the award in this case. That amounts to $9,492.00. Accordingly, the court will include in the award of attorneys fees and costs the amount of $6,596.00 for local counsel fees.

The plaintiff also seeks as costs the amounts paid to her expert, Dr. Jerry Goldman, and his database analyst, Michael Friedman, both of whom testified at the trial. Title 42 U.S.C. § 2000e-5(k) provides, in pertinent part, that "[i]n any action or proceeding under this title [42 U.S.C. § 2000e et seq.] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." According to Attorney Mollica, Dr. Goldman was paid $28,883, which amount included the database services provided by Mr. Friedman.

Piper Jaffray objects to the payment of any expert fees. This is because, according to the defendant, "the experts Lane hired worked only on her gender discrimination claim. Lane is therefore not entitled to recover expert witness fees incurred on an unrelated claim." (Def.'s Mem. at 19.) The defendant argues as follows:

13

> Lane's use of expert witnesses to support for her discrimination claim is but one of many examples of the resources she dedicated to this specific cause of action – which she failed to prove at trial. Lane hired two experts and focused intently on compilations of account transfers in seeking to prove that male brokers received significantly more and better accounts than female brokers. All of the time spent by these experts related to her gender discrimination claim. Indeed, when Lane was required to submit proof of her economic losses for her retaliation claim, she abandoned Dr. Goldman's analysis and relied instead on simple math to prove alleged losses in income. Effectively, the work performed by Dr. Goldman and Mr. Friedman was meaningless to this case.

(Def.'s Mem. at 5.)

It is correct to say that much of the work performed by Dr. Goldman and Mr. Friedman turned out to not be admissible in this action. That is not to say, however, that all of their work was of no relevance. Indeed, they were allowed to testify at trial on some matters and to present to the jury the results of some of their work. And, even though the jury ended up finding for the plaintiff only on the retaliation claim, I am of the opinion that the plaintiff should nevertheless be awarded as costs some of the expert fees billed to her by Dr. Goldman and Mr. Friedman. Dr. Goldman's January 19, 2005 invoice is for $6,585.00 and reflects time spent by Mr. Friedman and Dr. Goldman preparing for trial testimony and for testimony at trial. The court will include that amount in its award for attorneys fees and costs under § 2000e-5(k). The court will also include an additional $10,000.00 in its award to reflect time spent by Dr. Goldman and Mr. Friedman over the past several years preparing reports, conferring with counsel and (at least in the case of Dr. Goldman) preparing for and attending a deposition. Thus, the court will include in its award for attorneys fees and costs the amount of $16,585.00 for expert fees.

The plaintiff seeks, under 42 U.S.C. § 2000e-5(k), recovery of the following items as costs: court reporter fees for real-time trial transcripts - $4,290.09; package delivery services - $1, 317.67;

14

long distance phone calls - $14.90; Westlaw legal research - $9,489.53; photocopying expenses - $7,740.41; travel expenses - $9,288.42; and, plaintiff's share of the cost of trial equipment - $2,047.43.

Piper Jaffray objects to package delivery services costs in the amount of $1,317.67 and Westlaw legal research costs in the amount of $9,489.53, arguing that Lane "has provided no detail regarding the entries from which this Court may determine the validity of the expenses she seeks." (Def.'s Mem. at 18.) I disagree. Exhibit "L" to Attorney Mollica's Declaration sets forth a record of the dates on which Westlaw research was conducted in this case and the amount that Westlaw charged Meites Mulder for such research. Likewise, Exhibit "M" to Mr. Mollica's Declaration provides a record of the dates and charges relating to FedEx delivery services in this case. Consequently, the court will include in its award for attorneys' fees and costs the amount of $10,807.20 for Westlaw legal research costs and package delivery services.

The plaintiff also seeks $7,740.41 in photocopying expenses. The defendant objects to the plaintiff's request on grounds that the plaintiff has provided insufficient documentary detail to support such a request. I disagree. In my opinion, the plaintiff has provided sufficient documentary support for such request. Thus, the court will include in its award for attorneys' fees and costs the amount of $7,740.41 for copying fees.

As to the court reporter fees for real-time trial transcripts in the amount of $4,290.09, the plaintiff explains in her reply brief that "the real-time transcripts . . . are not official court transcripts, but instead are unofficial reports that were used as an aid to briefing the post-trial motions and are compensable as costs under Title VII." (Pl.'s Reply, at 2 n. 1.) This was in reply to Piper Jaffray's objection to the same based on its assertion that the plaintiff "never moved the Court pursuant to

15

Local Rule 54.2(e) for permission to obtain daily transcripts and have those transcripts included as part of the costs in this case." (Def.'s Mem. at 19.)  Given the plaintiff's explanation, I am satisfied that for the plaintiff to incur the amount of $4,290.09 to obtain the above-described "unofficial reports" was reasonable and necessary.  Thus, the court will include in its award for attorneys' fees and costs the amount of $4,290.09 for unofficial transcripts.

The defendant argues that "travel expenses incurred during trips to Milwaukee [including the expenses associated with counsel's stay in Milwaukee during the trial] are not compensable in this case.  Meites Mulder solicited Lane as a client, not the reverse.  Piper Jaffray also objects to the payment of travel expenses incurred by Meites Mulder for travel to Minneapolis during this case." (Def.'s Mem. at 17.)  Piper Jaffray maintains that the only compensable travel expense is 50% of the cost of the ticket for plaintiff's counsel to travel to San Francisco to attend the mediation of this case simultaneously with the mediation of another of Meites Mulder's clients.

To be sure, Lane did not seek out Meites Mulder to represent her.  Instead, as noted previously, it was Meites Mulder that contacted Lane during the course of its involvement in a potential class action lawsuit in California.  But, that does not therefore mean that the expenses incurred by lawyers from Meites Mulder when traveling to represent Lane at depositions and at trial were not necessarily and reasonably incurred by them.  To the contrary, for them not to have incurred such expenses by traveling to such destinations to attend court hearings, depositions and trial would have constituted a failure to discharge their obligations as her counsel.  Thus, the court will include in its award for attorneys' fees and costs the amount of $9,288.42 for travel expenses.

Finally, because there has been no objection to the same, the court will also include in its award for attorneys' fees and costs the amounts of: $14.90 for long distance telephone calls;

16

$2,047.43 as plaintiff's share of the cost of trial equipment; $101.00 for fees of the clerk; $1,054.00 for fees for service of summons and subpoena; $7,228.06 for fees of the court reporter; and $330.14 for fees of witnesses.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's petition for attorneys' fees and costs be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the plaintiff be awarded attorneys' fees in the amount of $189,840.00;

**IT IS FURTHER ORDERED** that the plaintiff be awarded costs in the amount of $66,083.37;

**IT IS FURTHER ORDERED** that the Clerk of Court enter an amended judgment accordingly.

**SO ORDERED** this 24th day of May 2005, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

17

Case 2:01-cv-00925-WEC   Filed 05/24/05   Page 17 of 17   Document 212